UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| ERNIE SCINTO | : | |
|     Plaintiff, | : | |
| | : | Civil No.: 3:17-cv-1528 (VLB) |
| v. | : | |
| | : | |
| OCEAN LINK CO., LTD, | : | |
| SHANDEX CORPORATION, | : | May 11, 2018 |
|     Defendants. | : | |

## SUMMARY DENIAL OF DEFENDANT'S MOTION TO DISMISS

Plaintiff filed the instant action on September 12, 2017, alleging unlawful discrimination and retaliation in violation of the Americans with Disabilities Act ("ADA") and Connecticut Fair Employment Practices Act ("CFEPA"), interference and retaliation under the state and federal Family and Medical Leave Acts ("FMLA" and "CTFMLA"), as well as breach of contract, breach of the covenant of good faith and fair dealing, negligent misrepresentation, and negligent inducement. Before the Court is Defendant's Motion to Dismiss the Complaint. For the reasons set forth below, Defendant's Motion to Dismiss is DENIED.

**I. Factual Background**

The following facts are based on the allegations in the Complaint, which are taken as true and construed in the light most favorable to Plaintiff for the purpose of a motion to dismiss. *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957). Defendants Shandex Corporation ("Shandex") and Ocean Link Co., Ltd. ("Ocean Link") (together, "Defendants") are New Jersey corporations with headquarters in New Jersey. Cmplt. at ¶ 3. The Defendants conduct business in Connecticut and

1

maintain a corporate office in Guilford.  *Id*.  The Defendants "operate as a single employer because they maintain the same corporate headquarters both here in Connecticut and in New Jersey, share the same management, share the same human resources department, have the same shareholders and have the same email communications system."  *Id*.  The "combined defendant affiliate companies employ more than 75 employees."  *Id*. at ¶ 54.

Plaintiff is a Connecticut resident who was employed by Defendants as a full-time salesperson beginning on January 4, 2016.  *Id*. at ¶¶ 2, 10.  The job posting to which Plaintiff responded stated the salesperson hired would be expected to do "a lot of B2B cold calling" to effectuate sales, but would be provided "leads [which] are well qualified and generally well received."  *Id*. at ¶ 8.  The starting salary was $35,000 plus commission, which the job description stated would be between $1,500 and $5,000 annually, and benefits.  *Id*.  The salesperson would receive an automatic $5,000 salary increase in year two.  *Id*.  When Plaintiff interviewed with Defendants' owner, Stewart Yao, Mr. Yao offered Plaintiff a position as a sales associate with a starting base salary of $35,000, consistent with the job posting.  *Id*. at ¶ 10.  However, Mr. Yao stated Plaintiff "should expect to earn at least $60,000 during the first year based on his past sales experience."  *Id*. Mr. Yao also stated Plaintiff's healthcare benefits would begin after a 90-day review period.  *Id*.  Defendants "specifically agreed to the terms outlined" in the job posting at Plaintiff's interview, including the $5,000 raise in year two.  *Id*. at ¶ 67.

Upon beginning work as a salesperson for Defendants, Plaintiff discovered that the "few leads he was given were to companies that had been called previously by an employee that had been terminated about two months after Mr. Scinto started." *Id.* at ¶ 11. His calls were not well-received, and the leads provided by Defendants did not result in sales. *Id.* In addition, Plaintiff was frequently asked to solicit clients in different markets due to evolving laws regarding international trade and Defendants' conflicts of interest. *Id.* at ¶ 12. Plaintiff found it difficult to continually change markets, as each new market required him to "start all over again" with "different types of companies." *Id.*

Despite his difficulty, after his 90-day probationary period, Plaintiff was told he was doing well, and that his health insurance coverage would begin on April 1, 2016. *Id.* at ¶ 13. When he did not receive health insurance as scheduled, he followed up with Defendants, and Defendants responded by instructing Plaintiff to "do research in order to find health insurance on his own." *Id.* After "many back and forth communications, Mr. Scinto was provided health insurance in June 2016 with an insurer found by [Defendants]." *Id.*

In his first year of work, Plaintiff earned $834.72 in commission. *Id.* at ¶ 14. Plaintiff expressed concern about his sales volume, but sales manager Dan Murray instructed him to "continue in the direction that was laid out." *Id.* at 5.

In November 2016, Plaintiff was diagnosed with prostate cancer and was told he would require surgery in February or March of 2017. *Id.* at ¶ 15. The surgery would necessitate four to six weeks of recovery. *Id.* Plaintiff informed

Mr. Murray; Mr. Murray did not mention how Plaintiff's medical condition would impact his work. *Id*.

On December 20, 2016, Mr. Murray told Plaintiff that Mr. Yao instructed that Plaintiff was to take on a new role based on his low sales volume in 2016. *Id*. at ¶ 20. In the new position, Plaintiff would no longer solicit business, but would instead be "in charge of servicing and supporting Mr. Murray's customer accounts, and would receive ten percent of his commission on the resulting sales." *Id*. Plaintiff accepted the new position. *Id*.

On December 30, 2016, Mr. Yao and Mr. Wong, Defendants' founder, held Plaintiff's year-end review. *Id*. at ¶¶ 17-18. At that meeting, Plaintiff asked whether he would be allowed to return to work after he recovered from his surgery, emphasized that he did not expect to be paid during his absence, and "made sure the company was aware that he had made up the time he had lost due to absences for doctor appointments." *Id*. at ¶ 18. Mr. Yao and Mr. Wong did not answer Plaintiff's questions about how his surgery would impact his job security, and did not provide any feedback on Plaintiff's job performance. *Id*.

On January 1, 2017, Plaintiff learned he would not receive the agreed upon $5,000 raise, and emailed Mr. Yao and Mr. Murray "expressing his disappointment." *Id*. at ¶ 19. Later that month, Plaintiff informed Mr. Murray that his surgery was scheduled for March 14, 2017. *Id*. at ¶ 20.

On February 6, 2017, Plaintiff asked Mr. Murray for job performance feedback, and Mr. Murray "said that he had told Mr. Yao that Mr. Scinto was doing great job in his new position." *Id*. at ¶ 21. Consistent with that statement,

4

Plaintiff asserts he "received nothing but positive reviews and comments about his work performance" through the course of his employment. *Id*. at ¶ 23. However, on February 28, 2017, Mr. Murray terminated Plaintiff. *Id*. at ¶ 22. Mr. Murray stated "it just isn't working out," and did not explain what if anything had changed since his positive feedback earlier that month. *Id*. Mr. Murray indicated that Plaintiff would receive his monthly paycheck in March and his health insurance would extend through April 30, 2017. *Id*. Plaintiff's health insurance continued as promised, but Plaintiff never received his final paycheck. *Id*. at ¶ 25. Plaintiff asserts he was terminated not due to poor performance, but because of his disability and surgery. *Id*. at ¶ 26.

Plaintiff challenged his termination with the Connecticut Commission on Human Rights and Opportunities ("CHRO") and United States Equal Employment Opportunity Commission ("EEOC"). *Id*. at ¶ 4. On July 17, 2017, Plaintiff received a notice of right to sue from the EEOC, and on August 10, 2017, he received a release of jurisdiction from the CHRO. *Id*. at ¶¶ 5-6. After exhausting administrative remedies, Plaintiff brought the instant action on September 12, 2017. *Id*. at 1.

## II. Statement of Law

To survive a Motion to Dismiss under Federal Rule of Civil Procedure 12(b)(6), the complaint must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the

misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *see also In re Scholastic Corp. Sec. Litig.*, 252 F.3d 63, 39 (2d Cir. 2001) (quoting *Hishon v. King & Spaulding*, 467 U.S. 69, 73 (1984) (stating in order to overcome a motion to dismiss, a complaint must clearly allege a set of facts that, if proved, constitute the claim asserted); *Kilduff v. Cosential, Inc.*, 289 F. Supp. 2d 12, 17 (D. Conn. 2003) (same). In considering a motion to dismiss for failure to state a claim, courts follow a "two-pronged approach" to evaluate the sufficiency of the complaint. *Hayden v. Paterson*, 594 F.3d 150, 161 (2d Cir. 2010). "A court 'can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth.'" *Id.* (quoting *Iqbal*, 556 U.S. at 679). "At the second step, a court should determine whether the 'well-pleaded factual allegations,' assumed to be true, 'plausibly give rise to an entitlement to relief.'" *Id.* (quoting *Iqbal*, 556 U.S. at 679). "The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678 (internal quotations omitted).

III. <u>Analysis</u>

Defendants move to dismiss Plaintiff's claims under the ADA, FMLA, and CTFMLA for failure to allege that Defendants employ the requisite number of employees to qualify as "employers" under those statutes, either jointly or as individual companies. Defendants assert Plaintiff "makes no attempt to specifically define the number of employees employed by either Defendant Ocean Link or by Defendant Shandex." [Mot. to Dismiss at 8.] In support, Defendants

6

assert that Ocean Link has three employees and Shandex has nine, and that the two companies accordingly fall below the employee threshold for the ADA, FMLA, and CTFMLA whether considered as separate entities or jointly.  [Reply in Support of Mot. to Dismiss at 5; *Id*. at Ex. A (Affidavit of Stewart Yao) (stating Shandex has nine employees).]

The ADA defines an employer as "a person engaged in an industry affecting commerce who has 15 or more employees . . ."  42 U.S.C. § 12101(5)(A).  The FMLA defines an employer as "any person engaged in commerce or in any industry or activity affecting commerce who employs 50 or more employees . . ."  29 U.S.C. § 2611(4)(A)(i).  The CTFMLA defines an employer as "a person engaged in any activity, enterprise, or business who employs seventy-five or more employees . . ."  Conn. Gen. Stat. § 31-51kk(4).  Plaintiff alleges that the Defendants "operate as a single employer" which employs "more than 75 employees."  *Id*. at ¶¶ 3, 54.  Accordingly, Plaintiff has alleged that Defendants have enough employees to qualify as "employers" under the ADA, FMLA, and CTFMLA.

The purpose of a pleading is to put a defendant on notice of a plaintiff's claims; the pleading standard requires nothing more.  Fed. R. Civ. P. 8; *Hishon*, 467 U.S. at 73 ("A court may dismiss a complaint only if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations"); *Anderson News, LLC v. Am. Media, Inc.*, 680 F.3d 162, 168 (2d Cir. 2012) (explaining that a pleading must state the "factual allegations that are sufficient to give fair notice of what the claim is and the ground upon which it

rests"). The allegations of the Complaint are sufficient to place Defendants on notice of the claims asserted. Defendants cannot credibly assert the pleadings were insufficient to place them on notice of Plaintiff's claims arising under the ADA, FMLA, and CTFMLA; Defendants' motion to dismiss those claims belies any unawareness of them.

Further, Defendants have cited no cases imposing a more specific pleading standard, requiring a Plaintiff to allege the Defendants' exact number of employees in order to satisfy the employee threshold under the ADA, FMLA, or CTFMLA. The Court finds Plaintiff's allegation that Defendants have over seventy-five employees sufficient to state a basis upon which relief could be granted. *See Da Silva v. Kinsho Int'l Corp.*, 229 F.3d 358, 365 (2d Cir. 2000) (stating a plaintiff's "ultimate failure to prove [that defendant had the requisite number of employees to trigger Title VII] is not a ground for dismissing . . . for failure to state a claim; it is a ground for defeating her federal claim on the merits").

Defendants invite the Court to impermissibly rely on facts presented in support of its Motion to Dismiss which might refute the allegations of the Complaint. [*See, e.g.*, Reply in Support of Mot. to Dismiss at 5 (asserting Ocean Link has three employees and Shandex has nine); *Id.* at Ex. A (Affidavit of Mr. Yao stating Shandex has nine employees).] However, the Court must limit its review on a motion to dismiss to "the facts as asserted within the four corners of the complaint, the documents attached to the complaint as exhibits, and any documents incorporated in the complaint by reference." *McCarthy v. Dun &*

*Bradstreet Corp.*, 482 F.3d 184, 191 (2d Cir. 2007); *see also Sovereign Bank v. Ellis*, 09-cv-02597, 2009 WL 2207922, at *3 (S.D.N.Y. 2009) (noting that a Court may not consider extrinsic evidence in determining whether the allegations in the Compliant state a claim). The Court may also consider "documents either in plaintiffs' possession or of which plaintiffs had knowledge and relied on in bringing suit." *Brass v. Am. Film Techs., Inc.*, 987 F.2d 142, 150 (2d Cir. 1993). The extrinsic evidence Defendants offer in support of their Motion to Dismiss was not attached to the complaint, incorporated into the complaint by reference, or within the scope of Plaintiff's knowledge when he brought this suit. Rather, this is a textbook example of why a court may *not* consider evidence outside the Complaint in deciding a motion to dismiss.

The parties have not exchanged initial discovery - despite repeated extensions of time to answer the Complaint, file their Local Rule of Civil Procedure 26(f) Planning Report, and the like. Thus, Plaintiff has no basis to challenge the refutations relied upon by the Defendant. Were courts to dismiss cases based on disputed facts prior to discovery, few cases would survive a motion to dismiss. Accordingly the Defendant's Motion to Dismiss is DENIED.

Finally, the parties are reminded of the well-established law in this circuit that "[a] motion to dismiss does not automatically stay discovery, except in cases covered by the Private Securities Litigation Reform Act." *Hong Leong Fin. Ltd. (Singapore) v. Pinnacle Performance Ltd.*, 297 F.R.D. 69, 72 (S.D.N.Y. 2013) (citation omitted). Thus, "discovery should not be routinely stayed simply on the basis that a motion to dismiss has been filed." *Id.* (quoting *Moran v. Flaherty*,

9

1992 WL 276913, at *1 (S.D.N.Y. Sept. 25, 1992)).  Only upon a party's showing of good cause should a district court exercise its discretion to stay discovery pursuant to Fed. R. Civ. P. 26(c).  *Integrated Sys. & Power, Inc. v. Honeywell Int'l, Inc.*, 2009 WL 2777076, at *1 (S.D.N.Y. Sept. 1, 2009); accord *Ellington Credit Fund, Ltd. v. Select Portfolio Servs., Inc.*, 2009 WL 274483, at *1 (S.D.N.Y. Feb. 3, 2009).  No motion to stay has been filed in this case, no good cause to stay the case has been shown and no order staying the case has entered.  Accordingly, the Court presumes that the parties have commenced and are proceeding with discovery in conformity with the federal rules, this Court's chambers practices and the law of this Circuit

Defendants raise a threshold issue for which discovery is required; the parties are therefore ordered to continue expeditiously with discovery, particularly on the number of employees employed by each Defendant and whether individually or collectively Defendants are subject to ADA, FMLA, and CTFMLA.  Discovery on that issue is ordered to be completed not later than 35 days after the date of this Order.  Defendant may file a motion for summary judgment on this limited basis not later than 70 days after the date of this Order.  Plaintiff shall file any objection to, or stipulate to judgment based on, such a motion not later than 84 days after the date of this Order.

IV. Conclusion

For the reasons set forth above, Defendants' Motion to Dismiss is DENIED.

IT IS SO ORDERED.

                                                                             **/s/**
                                                    **Hon. Vanessa L. Bryant**
                                                    **United States District Judge**

**Dated at Hartford, Connecticut: May 11, 2018**